IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:18-cv-370

| | |
|---|---|
| **Allen Grimes**, on behalf of himself and all others similarly situated, | |
| **Plaintiff,** | |
| **v.** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **LM Restaurants, Inc.**, a North Carolina Corporation; **Brier Creek Ale House, Inc.**, a North Carolina Corporation; **Cary Ale House, Inc.**, a North Carolina Corporation; **Franklin Street Ale House LLC**, a North Carolina Corporation; **Charlotte Plaza Ale House LLC**, a North Carolina Corporation; **Waverly Ale House LLC**, a North Carolina Corporation; **Concord Mills Ale House LLC**, a North Carolina Corporation; **Durham Ale House, Inc.**, a North Carolina Corporation; **Fayetteville Ale House, Inc.**, a North Carolina Corporation; **White Oak Ale House LLC**, a North Carolina Corporation; **Greenville NC Ale House LLC**, a North Carolina Corporation; **Jacksonville NC Ale House LLC**, a North Carolina Corporation; **North Raleigh Ale House, Inc.**, a North Carolina Corporation; **Raleigh Ale House, Inc.**, a North Carolina Corporation; **Wake Forest Ale House, Inc.**, a North Carolina Corporation; **Wilmington Ale House, Inc.**, a North Carolina Corporation; **Winston-Salem Ale House LLC**, a North Carolina Corporation; **Knoxville Ale House, Inc.**, a Tennessee Corporation; and **Short Pump Ale House LLC**, a Virginia Corporation, collectively d/b/a "Carolina Ale House," | |
| **Defendants.** | |

Plaintiff Allen Grimes ("Plaintiff"), individually and on behalf of all others similarly

situated who are or were employed as a current or former Assistant Kitchen Manager and paid

within the period beginning three years prior to the filing date of this Complaint as exempt from

1

the overtime laws ("AKM"), by and through undersigned counsel, hereby brings suit against Defendants alleging as follows:

## NATURE OF THE ACTION

1.     This action seeks to recover unpaid overtime wages and all allowable damages, interest, and attorney's fees and costs under the Fair Labor Standards Act ("FLSA") for Plaintiff individually, and as a collective action under the FLSA (the "Collective Action") for Plaintiff and all current or former AKMs who worked more than 40 hours as an AKM for which they were paid by salary or otherwise paid as exempt from the overtime laws, in any workweek at any of Defendants' locations, for which workweek the individual was paid on a pay date within the period beginning three years preceding the filing date of this Complaint and ending on the date of judgment in this matter (the "FLSA relevant period") (each a "Collective Member" and collectively "Collective Members"), who elect to opt into this action pursuant to 29 U.S.C. § 216(b) of the FLSA; and as a class action for unpaid straight time, overtime compensation, and related penalties and damages for Defendants' practice and policy of willfully failing and refusing to properly pay all earned and accrued straight-time and overtime wages on employees' regular pay date in direct contravention of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 *et seq.* (the "Class Action") within the period beginning two years preceding the filing date of this Complaint (the "Class Action Period") for Plaintiff and all current or former AKMs who worked more than 40 hours as an AKM for which they were paid by salary or otherwise paid as exempt from the overtime laws in any workweek at any of Defendants' locations in North Carolina, for which workweek the individual was paid on a pay date within the Class Action Period (the "Class Action Members").

## THE PARTIES

2.      Plaintiff Allen Grimes ("Plaintiff") was at all times relevant hereto a resident of Greenville, North Carolina, within this judicial district.

3.      Plaintiff worked for Defendants as an AKM, the position at issue in this Complaint, at the Carolina Ale House restaurant location in Greenville, NC, within this judicial district.

4.      Plaintiff worked as an AKM from the completion of his "Manager in Training" period in approximately March, 2016 until approximately mid-August, 2016 (Plaintiff's "period of AKM employment"), when he moved to an hourly-paid front of house Shift Lead position.

5.      According to its corporate filings with the North Carolina Secretary of State, Defendant LM Restaurants, Inc. ("LMR") is a North Carolina corporation and may be served with process on its registered agent Ilias Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

6.      According to its corporate filings with the North Carolina Secretary of State, Defendant Brier Creek Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

7.      According to its corporate filings with the North Carolina Secretary of State, Defendant Cary Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

8.      According to its corporate filings with the North Carolina Secretary of State, Defendant Franklin Street Ale House LLC is a North Carolina corporation and may be served

with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

9.      According to its corporate filings with the North Carolina Secretary of State, Defendant Charlotte Plaza Ale House LLC is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

10.      According to its corporate filings with the North Carolina Secretary of State, Defendant Waverly Ale House LLC is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

11.      According to its corporate filings with the North Carolina Secretary of State, Defendant Concord Mills Ale House LLC is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

12.      According to its corporate filings with the North Carolina Secretary of State, Defendant Durham Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

13.      According to its corporate filings with the North Carolina Secretary of State, Defendant Fayetteville Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

14. According to its corporate filings with the North Carolina Secretary of State, Defendant White Oak Ale House LLC is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

15. According to its corporate filings with the North Carolina Secretary of State, Defendant Greenville NC Ale House LLC ("GAH") is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

16. According to its corporate filings with the North Carolina Secretary of State, Defendant Jacksonville NC Ale House LLC is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

17. According to its corporate filings with the North Carolina Secretary of State, Defendant North Raleigh Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

18. According to its corporate filings with the North Carolina Secretary of State, Defendant Raleigh Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

19. According to its corporate filings with the North Carolina Secretary of State, Defendant Wake Forest Ale House, Inc. is a North Carolina corporation and may be served with

process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

20.     According to its corporate filings with the North Carolina Secretary of State, Defendant Wilmington Ale House, Inc. is a North Carolina corporation and may be served with process on its registered agent Lou Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

21.     According to its corporate filings with the North Carolina Secretary of State, Defendant Winston-Salem Ale House LLC is a North Carolina corporation and may be served with process on its registered agent Amber Moshakos at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district.

22.     According to its corporate filings with the Tennessee Secretary of State, Defendant Knoxville Ale House, Inc. is a Tennessee corporation having its principal office at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district, and may be served with process on its registered agent Incorp Services, Inc., 216 Centerview Dr, Suite 317, Brentwood, TN 37027-3226.

23.     According to its corporate filings with the Virginia Secretary of State, Defendant Short Pump Ale House LLC is a Virginia corporation having its principal office at 6510 Chapel Hill Rd #200 Raleigh, NC 27607-5010, within this judicial district, and may be served with process on its registered agent Incorp Services, Inc., 7288 Hanover Green Drive, Mechanicsville, VA 23111.

24.     At all material times, Plaintiff was an employee as defined in 29 U.S.C. § 203(e)(1).

25.     Defendant LMR was Plaintiff's "employer" as defined by the FLSA, 29 U.S.C. §

203(d).

26. Upon information and belief, Defendant GAH is a subsidiary of LMR.

27. Upon information and belief, all corporate entities named as defendants in this action are subsidiaries of LMR.

28. Defendant LMR jointly employed Plaintiff and the Collective Members under the FLSA, as a joint employer and/or joint enterprise with each subsidiary corporation for, and/or separate corporate entity created for, each CAH restaurant location managed and operated by LMR including but not limited to each entity named as defendants in this action, including jointly employing (with Defendant GAH) Plaintiff during his period of employment as an AKM at the Greenville, NC restaurant location.

29. At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose as defined by Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30. At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by Section 3(s) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

**DEFENDANTS ARE A SINGLE ENTERPRISE AND SINGLE EMPLOYER**

31. Defendant LMR's Complaint filed August 5, 2015 in the U.S. District Court for the Western District of North Carolina, in the case styled *LM Restaurants, Inc. v. Ale Yeah!,*

*Inc., et al*, Case No. 3:15-cv-00354-MOC-DSC (W.D.N.C.) [Doc. 1] (the "Ale Yeah" litigation), contained the statement: "LMR manages and operates restaurants, to include the chain of sports-themed restaurants known as the CAROLINA ALE HOUSE ("CAH")."

32.     Defendant LMR manages, and at all times during the FLSA relevant period managed, the chain of restaurants known as the Carolina Ale House ("CAH").

33.     Defendant LMR operates, and at all times during the FLSA relevant period operated, the chain of restaurants known as the Carolina Ale House ("CAH").

34.     Defendant LMR's Complaint filed in the Ale Yeah litigation contained the statement: "LMR started CAH in Raleigh in 1999. Since then, LMR expanded the CAH to twenty five locations in the Southeastern United States."

35.     Defendant LMR's Complaint filed August 26, 2014 in the U.S. District Court for the District of Maryland, in the case styled *LM Restaurants, Inc. v. DMC Enterprises, Inc.*, Case No. 1:14-cv-02740-RDB (D. Md.) [Doc. 1] (the "DMC" litigation), contained the statement: "LMR manages and operates restaurants, to include the chain of sports-themed restaurants known as the CAROLINA ALE HOUSE ("CAH")."

36.     Defendant LMR's Complaint filed in the DMC litigation contained the statement: "LMR started CAH in Raleigh in 1999. Since then, LMR expanded the CAH to twenty one locations in states along the Eastern Seaboard and an additional location in Texas. Lauded as one of the fastest growing private companies in the Raleigh, North Carolina area, the CAH continues to actively expand its operations and add restaurant locations. Four more CAH locations are set to open in the near future."

37.     Defendant LMR, at all times during the FLSA relevant period, manages and managed the chain of restaurants known as the Carolina Ale House ("CAH"), which included

approximately twenty-one locations as of August 26, 2014, and approximately twenty-five

locations in the Southeastern United States as of August 5, 2015.

38.     Defendant LMR, during one or more weeks within the FLSA relevant period,

operates and operated the CAH restaurants, which included approximately twenty-one locations

as of August 26, 2014, and approximately twenty-five locations in the Southeastern United

States as of August 5, 2015.

39.     Defendant LMR, during one or more weeks during the FLSA relevant period,

managed the following CAH restaurant locations owned in whole or in part by LMR:

| | | |
|---|---|---|
| Brier Creek | 7981 Skyland Ridge Pkwy | NC |
| Cary | 2240 Walnut St | NC |
| Chapel Hill (closed) | 419 West Franklin St | NC |
| Charlotte | 201 S College St, Ste 100 | NC |
| Charlotte-Waverly | 7404 Waverly Walk Avenue Suite I-1 | NC |
| Concord Mills | 8695 Concord Mills Blvd | NC |
| Durham | 3911 Durham Chapel Hill Blvd | NC |
| Fayetteville | 161 Glensford Drive | NC |
| Garner | 400 Conservation Rd | NC |
| Greenville | 704 S.E. Greenville Blvd | NC |
| Jacksonville | 1649 Western Blvd | NC |
| North Raleigh | 4512 Falls of Neuse Rd | NC |
| Raleigh-Downtown | 500 Glenwood Avenue | NC |
| Wake Forest | 11685 Northpark Drive | NC |
| Wilmington | 317-C College Road | NC |
| Winston-Salem | 150 Hanes Mall Circle | NC |
| Knoxville | 9045 Kingston Pike | TN |
| Short Pump | 11275 West Broad St | VA |

40.     Defendant LMR, during one or more weeks during the FLSA relevant period,

operated the following CAH restaurant locations owned in whole or in part by LMR:

| | | |
|---|---|---|
| Brier Creek | 7981 Skyland Ridge Pkwy | NC |
| Cary | 2240 Walnut St | NC |
| Chapel Hill (closed) | 419 West Franklin St | NC |
| Charlotte | 201 S College St, Ste 100 | NC |
| Charlotte-Waverly | 7404 Waverly Walk Avenue Suite I-1 | NC |

| | | |
|---|---|---|
| Concord Mills | 8695 Concord Mills Blvd | NC |
| Durham | 3911 Durham Chapel Hill Blvd | NC |
| Fayetteville | 161 Glensford Drive | NC |
| Garner | 400 Conservation Rd | NC |
| Greenville | 704 S.E. Greenville Blvd | NC |
| Jacksonville | 1649 Western Blvd | NC |
| North Raleigh | 4512 Falls of Neuse Rd | NC |
| Raleigh-Downtown | 500 Glenwood Avenue | NC |
| Wake Forest | 11685 Northpark Drive | NC |
| Wilmington | 317-C College Road | NC |
| Winston-Salem | 150 Hanes Mall Circle | NC |
| Knoxville | 9045 Kingston Pike | TN |
| Short Pump | 11275 West Broad St | VA |

41.     Defendant LMR filed a brief in support of its opposition to the defendant's motion to transfer in the Ale Yeah litigation [Doc. 22] that contained the statement: "LMR maintains premises that offer services under the ALE YEAH! mark in this district…LMR maintains at least two restaurants in this judicial district – in Charlotte and in Concord. [Ex. H; Ex. I.]."

42.     Defendant LMR maintains the CAH restaurants located in North Carolina, in addition to other states, including but not limited to the Greenville, NC restaurant location where Plaintiff worked as an AKM.

43.     Defendant LMR manages the CAH restaurants located in North Carolina, in addition to other states, including but not limited to the Greenville, NC restaurant location where Plaintiff worked as an AKM.

44.     Defendant LMR operates the CAH restaurants located in North Carolina, in addition to other states, including but not limited to the Greenville, NC restaurant location where Plaintiff worked as an AKM.

45.     Upon information and belief, Defendant LMR is owned, in whole or by holding more than a 10% ownership interest, by Lou Moshakos.

46. Upon information and belief, Defendant GAH is a subsidiary of Defendant LMR.

47. Upon information and belief, Defendant GAH is owned, in whole or by holding more than a 10% ownership interest, by LMR and/or by Lou Moshakos.

48. Upon information and belief, all corporate entities named as defendants in this action are subsidiaries of LMR.

49. Upon information and belief, all corporate entities named as defendants in this action are owned, in whole or by holding more than a 10% ownership interest, by LMR and/or by Lou Moshakos.

50. Upon information and belief, all corporate entities created for a restaurant location managed and/or operated by LMR are subsidiaries of LMR.

51. Upon information and belief, all corporate entities created for a restaurant location managed and/or operated by LMR are owned, in whole or by holding more than a 10% ownership interest, by LMR and/or by Lou Moshakos.

52. Upon information and belief, Defendant LMR and/or Lou Moshakos caused the incorporation of separate corporate entities for each CAH restaurant location managed and operated by LMR, each of which is a subsidiary of LMR, including but not limited to GAH.

53. Defendant LMR's current corporate filings with the North Carolina Secretary of State list its principal office as 6510 Chapel Hill Road, Suite 200, Raleigh, NC 27607.

54. Each separate corporate entity for each CAH restaurant location in North Carolina, Tennessee or Virginia that makes corporate filings with its state's Secretary of State, in the most current version of those filings, lists its principal office as 6510 Chapel Hill Road, Suite 200, Raleigh, NC 27607.

55. Each separate corporate entity for each CAH restaurant location in North Carolina

managed and operated by LMR that makes corporate filings with the North Carolina Secretary of State, in the most current version of those filings, lists its corporate officer (if the corporate entity name ends in "Inc.") or its manager or member (if the corporate name ends in "LLC" or "L.L.C.") as either Lou Moshakos or a member of Lou Moshakos' family having the last name of Moshakos.

56. Each separate corporate entity for each CAH restaurant location in North Carolina managed and operated by LMR that makes corporate filings with the North Carolina Secretary of State, in the most current version of those filings, lists its registered agent as either Lou Moshakos (if the corporate entity name ends in "Inc.") or Amber Moshakos, a member of Lou Moshakos' family (if the corporate entity name ends in "LLC" or "L.L.C."), at the registered agent's address listed as 6510 Chapel Hill Road, Suite 200, Raleigh, NC 27607.

57. Defendant GAH, in its current corporate filings with the North Carolina Secretary of State, lists Lou Moshakos' daughter Amber Moshakos as a "Manager" of the limited liability corporation and as its registered agent at the registered agent address of 6510 Chapel Hill Road, Suite 200, Raleigh, NC 27607.

58. At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

59. At all material times, Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) performed related activities through unified operation and common control for the common business purpose of operating Carolina Ale House restaurants in North Carolina, in addition to other states.

60. At all material times, Defendant LMR and each of its subsidiary corporate entities

created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) are and were engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of Carolina Ale House restaurants in North Carolina, in addition to other states.

61.     Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

62.     Carolina Ale House restaurants managed and operated by Defendant LMR are controlled by LMR, which directs, governs, and administers the performance of Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) regarding the operation and maintenance of Carolina Ale House restaurant locations in North Carolina, in addition to other states.

63.     Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) run each Carolina Ale House managed and operated by LMR identically, or virtually identically, and Defendants' customers can expect the same kind of food and beverage products and service at any location operating the same Carolina Ale House concept.

64.     At all times during the FLSA relevant period, Defendant LMR made policy decisions that apply to all of the restaurants managed and operated by LMR.

65.     Upon information and belief, in 2014, Defendant LMR made the policy decision

to prohibit the carrying of firearms in its Carolina Ale House restaurants, and Mindy Stroupe, Corporate Communications Manager for Defendant LMR, communicated that policy decision to the public.

66. Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) represent themselves to the general public through the Carolina Ale House website, operated by Defendant LMR, as one restaurant company, operating the CAH concept at multiple locations.[1]

67. The Carolina Ale House website, operated by Defendant LMR, allows potential job applicants to apply for employment at any of the CAH locations (including for the AKM position at issue), using a common job application form and common job postings for the positions at the CAH restaurants located in North Carolina, in addition to other states.[2]

68. Through the Carolina Ale House website, operated by Defendant LMR, Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) use a common job posting containing a common job description for the AKM position at issue for the CAH restaurant locations managed and operated by Defendant LMR in North Carolina, in addition to other states (including by clicking a location's link for an "Asst Chef Manager" position which opens a job posting that references the position as "Assistant Kitchen Manager").

69. And through Defendant LMR's website at http://www.lmrest.com/, under the "Join the Team" tab, Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) use a

---

[1] https://www.carolinaalehouse.com/our-restaurants/.
[2] https://www.carolinaalehouse.com/careers/;
https://my.peoplematter.com/mja/lmrestaurants/jobapp/GetStarted?refererUrl=https://www.carolinaalehouse.com/careers/.

common job posting containing a common job description for the AKM position at issue for the CAH restaurant locations managed and operated by Defendant LMR in North Carolina, in addition to other states (including by clicking a location's link for an "Asst Chef Manager" position which opens a job posting that references the position as "Assistant Kitchen Manager").[3]

70.     The AKM position at the restaurants managed by Defendant LMR is at a reporting level below the "Chef Manager" (alternatively referred to as "Kitchen Manager") position at those restaurants, and the "Chef Manager" (alternatively referred to as "Kitchen Manager") position at those restaurants is at a reporting level below the "General Manager" position at those restaurants.

71.     The job description in the job posting on the LMR website for the "Chef Manager" position[4] contains the following statements:

> Chef Managers supervise and coordinate activities concerning all back-of-the-house operations and personnel, including food preparation, kitchen and storeroom areas.
> Hires, discharges, trains, and evaluates back-of-house personnel. Purchases or requisitions food items, supplies and equipment. Plans or participates in menu planning and
> food production and apportions meat, vegetables and desserts, as well as food surpluses, to control costs. Supervises food preparation personnel to ensure food adheres
> to standards of quality to maintain cleanliness or kitchen and equipment. May meet with clients to plan special menus.
> • Oversee the entire kitchen operation of the restaurant
> • Train & develop assistant managers and hourly employees
> • Conduct all interviews for hourly kitchen employees
> • Achieve or exceed restaurant's budgets for food & labor costs
> • Oversee all phases of food production
> • Place orders as needed
> • Ensure strict, 100% recipe adherence
> • Develop and adjust order pars as needed

---

[3] https://lmr.peoplematter.jobs/#.
[4] *See* "Chef Manager" positions posted at https://lmr.peoplematter.jobs.

> • Maintain a clean & sanitary BOH environment
> • Proficient in all positions in the BOH
> • Work closely with the GM to establish goals for the BOH
> • Communicate effectively with staff, guests, and other members of management
> • Maintain an acceptable health score
> • Perform other duties and tasks as assigned or requested

72.    Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) share employees between the restaurant locations managed by Defendant LMR.

73.    Plaintiff himself trained at two different LMR owned and operated CAH locations (Raleigh, NC and Cary, NC) before commencing his AKM position at the Greenville, NC location.

74.    When the Chapel Hill-Carrboro restaurant location closed in 2017, Defendant LMR offered all employees in good standing positions at its other CAH locations.

75.    When the Chapel Hill-Carrboro restaurant location closed in 2017, Katherine Goldfaden, then director of marketing at Defendant LMR, said the LMR made a well thought out decision to close the Chapel Hill location, and stated that the Chapel Hill location did not meet the expectations that Defendant LMR originally forecast.

76.    Defendant LMR's human resources personnel provide human resources services to the CAH restaurants managed and operated by LMR.

77.    Defendant LMR's payroll personnel provide payroll services to the CAH restaurants managed and operated by LMR.

78.    Employees at the restaurants managed and operated by LMR are paid by paychecks that state that the payor is LMR, and are drawn on a bank account held by LMR.

79.    Plaintiff's paychecks stated that the payor was LMR, and were drawn on a bank

account held by LMR.

80.    All CAH restaurants managed and operated by LMR use the trade name "Carolina Ale House" for their restaurant locations.

81.    Defendant LMR owns the CAH brand, as well as all intellectual property associated with the chain.

82.    Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) advertise together on the same website (carolinaalehouse.com).

83.    Defendant LMR's Complaint filed in the DMC litigation contained the following statements:

   a.  LMR markets its CAH restaurant services through various advertising media, including on the Internet at www.carolinaalehouse.com. From this website, users and guests can learn about specials and events happening at the CAH restaurants, can access the CAH online newsletter, access photo galleries of various events hosted by the CAH, and can learn about CAH's philanthropy and community involvement.
   b.  LMR markets the CAH brand on social media sites including Facebook (www. face book. com/CarolinaAleHouseOfficial) and Twitter (twitter.com/carolinalehouse)….
         *         *         *
   d.  LMR further advertises in print media, newspapers, trade journals, magazines, signs, banners, and on numerous promotional materials….

84.    Defendant LMR and each of its subsidiary corporate entities created for each such restaurant location (including, for the Greenville, NC location, Defendant GAH) provide the same array of products and services to their customers at their CAH locations.

85.    The CAH restaurants managed and operated by Defendant LMR exist under the control and direction of Defendant LMR.

86.    The CAH restaurants managed and operated by Defendant LMR use a common system of internally classifying positions as exempt or non-exempt when conducting business.

87.     Throughout the FLSA relevant period to the present, the CAH restaurants managed and operated by Defendant LMR used a common classification for all salary-paid AKM positions as exempt from the overtime laws.

88.     The decision to classify all salary-paid AKM positions at the CAH restaurants managed and operated by Defendant LMR as exempt from the overtime laws that applied throughout the FLSA relevant period to the present was made by Defendant LMR.

89.     The job postings, and the job descriptions contained within those job postings, for all AKM positions at the CAH restaurants managed and operated by Defendant LMR were created by Defendant LMR and applied company-wide for all AKM positions at those restaurants.

90.     Defendants have violated the statutory rights of Plaintiff, and those similarly situated, under both the FLSA and the NCWHA which resulted in damages to Plaintiff and the Collective Members and Class Action Members in the form of unpaid straight-time wages and unpaid overtime wages on their regular payday, upon which they have incurred and are incurring costs, and reasonable attorney's fees.

91.     Defendants have violated the statutory rights of Plaintiff and those similarly situated, under the FLSA and NCWHA which were willful, which entitles Plaintiff and those similarly situated to an additional amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and N.C. Gen. Stat. §§ 95-25.22(a)(1) and (d), for pre-judgment interest and an award of attorney's fees and costs.

## JURISDICTION & VENUE

92.     This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

93. The Class Action claims for the violations of the NCWHA are based upon the statutory law of the State of North Carolina.

94. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative fact as the FLSA claim.

95. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

96. The evidence establishing liability for both causes of action will be similar and neither issue will predominate nor create confusion to a jury.

97. Plaintiff worked for the joint employer Defendants as an AKM in this judicial district and received paychecks for that work in this judicial district; Defendant LMR operates CAH restaurant locations in this judicial district, including but not limited to the Greenville, NC location where Plaintiff worked during his period of AKM employment; Defendants operate out of the same principal office at 6510 Chapel Hill Road, Suite 200, Raleigh, NC 27607 within this judicial district; and a substantial part of the events giving rise to the claim herein occurred in this judicial district, including but not limited to Plaintiff's employment at issue in this judicial district.

98. Venue is proper in this judicial district under 28 U.S.C. § 1391.

99. Defendants are subject to personal jurisdiction in this judicial district.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

100. Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to prosecute his FLSA claims individually and as a collective action on behalf of the Collective Members who are or were formerly employed by Defendants as AKMs internally classified and paid as overtime exempt at any time during the FLSA relevant period.

101. Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location, are jointly liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the other Collective Members.

102. There are many similarly situated current and former Collective Members who have not been paid overtime premiums for hours worked over 40 in a workweek in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it; thus, notice should be sent to the Collective Members pursuant to 29 U.S.C. § 216(b).

103. The similarly situated Collective Members are known to Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to the employees at its location, are readily-identifiable, and can be located through Defendants' records.

## STATEMENT OF FACTS

104. Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, jointly employed the Collective Members as AKMs during the FLSA relevant period.

105. Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, maintained control, oversight, and discretion over the operation of all of the CAH locations managed and operated by LMR, including its employment practices with respect to the Collective Members.

106. Plaintiff's and the Collective Members' work was performed in the normal course of Defendant LMR's business, and that of each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, and was integrated into it.

107.     The job posting for the AKM positions at the restaurants managed and operated by LMR states as a requirement: "Able to work at least ten hour shifts."

108.     Consistent with the Defendant LMR's policy, pattern and/or practice, which was required to be followed and was followed by each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, Plaintiff and the Collective Members worked over 40 hours as AKMs in one or more workweeks, but Plaintiff and the Collective Members did not receive overtime premiums on one or more regularly scheduled pay dates within the FLSA relevant period for those weeks worked as AKMs in excess of 40 in those workweeks.

109.     Plaintiff frequently worked over 40 hours in a workweek during his period of AKM employment, and received one or more paychecks on the regularly scheduled pay dates for such workweeks within the FLSA relevant period that did not contain overtime premiums.

110.     The work that the Plaintiff and the Collective Members performed was assigned by Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, and/or Defendant LMR was aware of the work that Plaintiff and the Collective Members have performed as AKMs, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its locations were aware of the work that the Collective Members at its locations have performed as AKMs.

111.     The AKM work that Plaintiff and the Collective Members performed as part of their primary duty did not include managerial responsibilities or the exercise of meaningful independent judgment and discretion.

112.     Regardless of the CAH location at which they worked, the work that Plaintiff and the AKMs performed as part of their primary duty included:

a.     preparing food;
b.     expediting food service;
c.     cleaning;
d.     checking to make sure that supplies were properly shelved; and
e.     checking inventory.

113.     Regardless of the CAH location at which they worked, the work that Plaintiff and the AKMs performed as part of their primary duty did not include:

a.     hiring;
b.     firing;
c.     disciplining other employees;
d.     scheduling;
e.     supervising and delegating; or
f.     exercising meaningful independent judgment and discretion.

114.     Plaintiff's and the AKMs' primary duties were manual in nature and were not performed in an office.

115.     The performance of manual labor duties in a kitchen occupied the majority of Plaintiff's and the AKMs' working hours.

116.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant LMR internally classified, and paid, all of its salary-paid Assistant Kitchen Manager positions, including Plaintiff's and the Collective Members' AKM positions, as exempt from the maximum hour overtime compensation requirements of the FLSA, throughout the FLSA relevant period to the present.

117.     Pursuant to Defendant LMR's centralized, company-wide policy, pattern and/or practice, each of its subsidiary corporate entities created for each such restaurant location as to employees at its location treated its salary-paid Assistant Kitchen Manager positions, including Plaintiff's and the Collective Members' AKM positions, as exempt from the maximum hour overtime compensation requirements of the FLSA, throughout the FLSA relevant period to the present.

118. Upon information and belief, Defendant LMR did not perform a person-by-person analysis of the AKMs' job duties when making the decision to classify the salary-paid AKMs (and other similarly-situated and similarly classified current and former employees holding comparable positions but different titles) as exempt from the overtime provisions of the FLSA that applied during the FLSA relevant period to the present.

119. Upon information and belief, each of its subsidiary corporate entities created for each such restaurant location as to employees at its location did not perform a person-by-person analysis of the AKMs' job duties when making the decision to classify the salary-paid AKMs (and other similarly-situated and similarly classified current and former employees holding comparable positions but different titles) as exempt from the overtime provisions of the FLSA that applied during the FLSA relevant period to the present.

120. Upon information and belief, Defendant GAH as to employees at its location did not perform a person-by-person analysis of the AKMs' job duties when making the decision to classify the salary-paid AKMs (and other similarly-situated and similarly classified current and former employees holding comparable positions but different titles) as exempt from the overtime provisions of the FLSA that applied during the FLSA relevant period to the present.

121. Defendant LMR's conduct, and that of each of its subsidiary corporate entities created for each such restaurant location as to employees at its location alleged herein, was willful and/or in reckless disregard of the applicable wage and hour laws and was undertaken pursuant to a centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by not paying overtime premiums to its Assistant Kitchen Managers paid by salary or otherwise paid as exempt from the overtime laws. Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its

location, knew that AKMs were not performing work that plainly and unmistakably complied with any FLSA exemption and each acted willfully or recklessly in failing to classify Plaintiff in his AKM position and other AKMs as non-exempt employees during the FLSA relevant period.

122.     During the FLSA relevant period, Defendant LMR was, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location were, aware or should have been aware, through its management-level employees, that Plaintiff in his AKM position and AKMs were primarily performing non-exempt duties.

123.     During the FLSA relevant period, Defendant LMR was, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location were, aware or should have been aware, through its management-level employees, that Plaintiff in his AKM position and AKMs were performing non-exempt duties as their primary duties under the FLSA.

124.     During the FLSA relevant period, Defendant LMR was, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location were, aware that Plaintiff and one or more AKMs worked in excess of 40 hours per workweek on one or more occasion.

125.     Defendant LMR's policy, followed by each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, required AKMs to be regularly scheduled in excess of 40 hours per workweek during the FLSA relevant period, for shifts that regularly were or in excess of ten hours.

126.     During the FLSA relevant period, Defendant LMR was, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location were, aware that when Plaintiff and any AKM worked in excess of 40 hours per workweek, Plaintiff

and each such AKM did not receive overtime pay under the FLSA on the regular pay dates for those workweeks.

127.     During the FLSA relevant period, Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, knew or recklessly disregarded the fact that the FLSA required payment to Plaintiff and the Collective Members primarily performing non-exempt duties of overtime premiums for hours worked in excess of 40 per workweek.

128.     During the FLSA relevant period, Defendant LMR's conduct, and that of each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, was therefore willful and/or in reckless disregard of the applicable wage and hour laws and undertaken pursuant to Defendant LMR's centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by not paying overtime premiums to AKMs.

129.     During the FLSA relevant period, Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, failed to record the start and stop times of all hours worked by Plaintiff and the Collective Members as AKMs.

130.     During the FLSA relevant period, Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location, intentionally, willfully, and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the Collective Members. This policy and pattern or practice includes but it is not limited to:

        a.     Failing to record the start and stop times of all hours worked by Plaintiff and the Collective Members as AKMs;

b.    willfully misclassifying Plaintiff and the Collective Members as exempt

from the requirements of the FLSA during their AKM employment;

c.    willfully failing to pay Plaintiff and the Collective Members overtime

wages for hours that they worked in excess of 40 hours per week during

their AKM employment;

d.    requiring Plaintiff and the Collective Members to perform non-exempt

tasks as their primary duties during their AKM employment; and

e.    willfully failing to provide enough money in restaurant-level labor budgets

for the hourly-paid employees to perform their duties and responsibilities.

131.    Defendant LMR's willful violations of the FLSA are further demonstrated by the

fact that prior to the start of the FLSA relevant period, upon information and belief, Defendant

LMR was aware, and each of the corporate entities created for each restaurant location operated

or managed by LMR was aware, that a federal district court had entered judgment in 2010 on a

verdict in favor of an Assistant Kitchen Manager at a Carolina Ale House restaurant on his

claim that he was misclassified as exempt under the FLSA in *Rutenberg v. Boynton Carolina*

*Ale House, LLC*, No. 9:09-cv-80409-KAM (S.D. Fla.), but Defendant LMR, and each of its

subsidiary corporate entities created for each such restaurant location as to employees at its

location, did not pay Plaintiff and the Collective Members overtime premiums for recorded

overtime hours worked as AKMs.

### FIRST CAUSE OF ACTION
**Fair Labor Standard Act – Unpaid Overtime Wages**
**On Behalf of Plaintiff and the FLSA Collective**

132.    Plaintiff incorporates herein the preceding allegations.

133.    At all relevant times, Defendant LMR, Defendant GAH, and each of its subsidiary

corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

134.    At all relevant times, Defendant LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, are subject to the coverage of the maximum hours and overtime compensation provisions of the FLSA.

135.    At all relevant times, Defendant LMR and Defendant GAH employed Plaintiff as an AKM, and Defendant LMR, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, employed Collective Members, within the meaning of the FLSA.

136.    At all relevant times, Defendant LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, engaged in a widespread pattern and practice of violating the FLSA, as detailed above in this Complaint.

137.    Plaintiff consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), as reflected in the attached consent filed contemporaneously herewith.

138.    The overtime wage provisions set forth in 29 U.S.C. § 201 *et seq.*, applied at all relevant times to Defendant LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities.

139.    During the FLSA relevant period and continuing to the present time, Defendant

LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, had a policy and practice of not paying overtime premiums to Plaintiff and the Collective Members for hours worked in excess of 40 hours per workweek as AKMs.

140.     As a result of their willful failure to compensate Plaintiff and the Collective Members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek as AKMs, Defendant LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities have violated and continue to violate the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

141.     As a result of Defendant LMR's, Defendant GAH's policy and practice, and that of each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, of minimizing labor costs by underfunding the labor budgets for its locations, Defendant LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, knew or recklessly disregarded the fact that Plaintiff and the Collective Members were performing non-exempt tasks as their primary duty.

142.     Due to their failure to provide enough labor budget funds, failure to take into account the impact of the underfunded labor budgets on the job duties of Plaintiff and the Collective Members, their actual knowledge through its managerial employees/agents that the primary duties of the Plaintiff and the Collective Members were manual labor (not in an office)

and included other non-exempt tasks, their failure to perform a person-by-person analysis of Plaintiff's and the Collective Members' job duties to ensure that they were performing exempt job duties, and their knowledge that Plaintiff and the Collective Members worked overtime hours without receiving overtime compensation, Defendant LMR, Defendant GAH, and each of its subsidiary corporate entities created for each such restaurant location as to employees at its location including but not limited to the named entities, knew and/or showed reckless disregard that their conduct was prohibited by the FLSA, 29 U.S.C. § 255(a).

143.    As a result of these FLSA violations, Plaintiff, on behalf of himself and the Collective Members, is entitled (a) to recover from Defendants unpaid overtime wages, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover their unreasonably delayed payment of wages, reasonable attorneys' fees, costs and disbursements of this action, and all allowable interest, pursuant to 29 U.S.C. § 216(b) and the federal rules.

144.    Because the violations of the FLSA alleged herein have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

**SECOND CAUSE OF ACTION**
**NCWHA – Class Action**
**On Behalf of Plaintiff and the Class Action Members**

145.    Plaintiff incorporates by references all paragraphs preceding the First Cause of Action as if the same were set forth again fully at this point.

146.    The class period for this cause of action is the Class Action Period defined above.

147.    It is unlawful under North Carolina law for an employer to "suffer or permit" an employee to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. § 95-25.6.

148.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, Defendants were required to pay Plaintiff and the Class Action Members all wages, when due, for all hours of work at the federal minimum wage rate on their regular pay date.

149.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, Defendants were required to pay Plaintiff and the Class Action Members all wages, when due, for all overtime wages of one and one-half times the federal minimum wage rate which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

150.     Defendants intentionally refused to pay all wages due as set forth in the paragraphs preceding the First Cause of Action of this Complaint to Plaintiff and Class Action Members in violation of the NCWHA.

151.     The foregoing conduct, as alleged, constitutes willful violations of the NCWHA, N.C. Gen. Stat. § 95-25.6.

152.     As set forth above, the NCWHA Plaintiff and Class Action Members have sustained losses and lost compensation as a proximate result of Defendants' violations. Accordingly, Plaintiff, on behalf of himself and all those similarly situated who constitute the Class Action Members, seeks damages in the amount of their unpaid earned compensation, liquidated damages, plus interest at the legal rate set for in N.C. Gen. Stat. § 95-25.22(a) and (a)(1).

153.     Plaintiff, on behalf of himself and the Class Action Members, seeks recovery of his attorney's fees as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d).

154.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and the Class Action Members.

155.     Pursuant to Rule 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure,
Plaintiff brings the Class Action claim as his second claim for relief to redress and remedy
Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*., on behalf of himself
and the Class Action Members.

156.     The Plaintiff and Class Action Members assert that Defendants violated the
NCWHA by failing to pay their employees overtime wages of one and one-half times their
regular rate of pay, which is part of the employees' accrued, earned, and promised wages and
should have been paid when due on the employees' regular payday; this requirement is not
covered by the overtime provisions of the FLSA.

157.     The Proposed Class:  Named Plaintiff proposes the same class for purposes of
certification under Rule 23 as under § 216(b) of the FLSA, except (i) the Class Action Members
are those paid for work as AKMs in North Carolina only and (ii) the difference between the
FLSA Period and the Class Action Period.  The proposed class is easily ascertainable.  The
number and identity of NCWHA class members are determinable from a list of Defendants'
employees and any other payroll records.

158.     Numerosity:  The proposed class is so numerous that the joinder of all such
persons is impracticable, and the disposition of their claims as a class will benefit the parties and
the Court.  While the exact number of class members is unknown to Plaintiffs at this time, upon
information and belief, the class comprises more than the number of class members that one or
more federal district courts have held sufficient for Rule 23 numerosity.

159.     Common Questions Predominate: There is a well-defined commonality of interest
in the questions of law and fact involving and affecting the proposed class in that Plaintiff and
all members of the proposed class have been harmed by Defendants' failure to pay earned

wages.  The common questions of law and fact include, but are not limited to the following:

> b.  Whether Defendants refused to pay Plaintiff and members of the proposed class
>
> overtime wages for all hours worked over forty (40) per week on their regular
>
> payday in violation of NCWHA § 95-25.6; and
>
> c.  Whether Defendants' refusal to pay such compensation is in violation of the
>
> NCWHA.

160.    Typicality: The claims of Plaintiff herein are typical of those claims which could

be alleged by a Class Action Member, and the relief sought is typical of the relief which would

be sought by each member of the class in separate actions.  All class members were subject to

the same compensation practices of Defendants, as alleged herein, of refusing to pay overtime

wages on the regular payday of the class members.  Defendants' compensation policies and

practices affected all class members similarly, and Defendants benefitted from the same type of

unfair and/or wrongful acts as to each class member.  Plaintiff and members of the proposed

class sustained similar losses, injuries, and damages arising from the same unlawful policies,

practices, and procedures.

161.    Adequacy of Representation: Plaintiff is able to fairly and adequately protect the

interests of all members of the class, and there are no known conflicts of interest between

Plaintiff and members of the proposed class.  Plaintiff has retained counsel who is experienced

and competent in both wage and hour law and complex class action litigation.

162.    Superiority: A class action is superior to other available means for the fair and

efficient adjudication of this controversy.  Individual joinder of all class members is

impracticable.  Class action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests though actions to which they were not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

163. Public Policy Considerations: Defendants violated (and continue to violate) the NCWHA. Like current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity that allows for vindication of their rights while eliminating or reducing these risks.

## PRAYER FOR RELIEF

Plaintiff seeks from this Honorable Court entry of a judgment against Defendants, jointly and severally as a single enterprise and employer, finding liability under the FLSA and the NCWHA, and entering the following relief on behalf of himself and all others similarly-situated:

A.  Designation of this action as an FLSA collective action on behalf of the Collective Members and prompt issuance of notice to all similarly-situated persons, apprising them of the pendency of this action, permitting them to join this action pursuant to 29 U.S.C. § 216(b);

B.  An Order certifying this action as a class action under the NCWHA and designating the above Plaintiff as a representative on behalf of all those similarly situated NCWHA Class Action Members;

C.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NCWHA;

D.  An award of unpaid wages under the FLSA for the FLSA relevant period and the Class Action for the Class Action Period for all hours worked as salary-paid AKMs in excess of 40 in a workweek at a rate of one and one-half times the regular rate of pay;

E.  Equitable tolling of the FLSA statute of limitations;

F.  An award of liquidated damages as a result of Defendants' willful failure to pay for all hours worked in excess of 40 in a workweek at a rate of time and one-half of the regular rate of pay pursuant to 29 U.S.C. § 216 and the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

G.    An award of pre- and post- judgment interest at the statutory rate as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a) and pursuant to the FLSA, 29 U.S.C. § 216(b);

H.    An award of costs, expenses and disbursements together with reasonable attorney's fees as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d) and pursuant to the FLSA, 29 U.S.C. § 216(b), and an award of a service payment to the Plaintiff; and

I.    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

### JURY TRIAL DEMANDED

Plaintiff, individually and on behalf of the Class and Collective Members, demands a trial by jury for all issues so triable.

This the 23rd day of July, 2018.

Respectfully submitted,

BY: /s/ Narendra K. Ghosh
Narendra K. Ghosh, NC Bar No. 37649
nghosh@pathlaw.com
Paul E. Smith, NC Bar No. 45014
psmith@pathlaw.com
**PATTERSON HARKAVY LLP**
100 Europa Dr., Suite 420
Chapel Hill, North Carolina 27517
(919) 942-5200

C. Andrew Head, IL Bar No. 6318974
(*pro hac vice* application to be filed)
Bethany A. Hilbert, IL Bar No. 6280213
(*pro hac vice* application to be filed)

**HEAD LAW FIRM, LLC**
4422 N Ravenswood Ave
Chicago, IL 60640
(404) 924-4151
ahead@headlawfirm.com
bhilbert@headlawfirm.com

*Attorneys for Plaintiff and the Class/Collective*